IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

GLOBAL TEL*LINK CORPORATION, )
)
          Plaintiff, )
)
     v. )          Civil Action No. 1:14cv1557 (TSE/JFA)
)
JAIL CALL SERVICES, LLC, )
)
          Defendant. )
_____)

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiff's motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). (Docket no. 24). In this action, plaintiff Global Tel*Link Corporation ("plaintiff" or "GTL") seeks a default judgment against the defendant, Jail Call Services, LLC ("defendant" or "JCS"). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

### Procedural Background

On November 18, 2014, plaintiff filed a verified complaint against JCS alleging various claims, including breach of contract under Virginia law, trademark infringement under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and common law trademark infringement. (Docket no. 1). Thereafter, plaintiff filed an "Emergency *Ex Parte* Motion" requesting that this court issue: (i) a temporary restraining order and order to show cause for preliminary injunction against JCS; (ii) an order restricting transfer of JCS's assets and records; and (iii) an order expediting discovery to allow GTL to inspect and copy JCS's books and records relating to the alleged infringing activity. (Docket no. 2). Notice was provided by sending a copy of the complaint,

motion, memorandum in support, and notice of hearing to JCS's registered agent on November 18, 2014 by overnight mail. (Docket no. 9 at 1).  Plaintiff also sent copies of these pleadings as e-mail attachments to the address provided on JCS's website.  (*Id.* at 1–2).

On November 21, 2014, the court granted plaintiff's *ex parte* motion and scheduled a preliminary injunction hearing for December 4, 2014 at 1:00 p.m.  (*Id.* at 4–5).  The temporary restraining order issued by the court was to remain in effect for ten days, subject to being renewed for an additional ten days upon a showing of good cause.[1]  *See* Fed. R. Civ. P. 65(b). As required by Federal Rule of Civil Procedure 65(a)(1), plaintiff provided JCS with notice of the temporary restraining order and preliminary injunction hearing by serving a copy of the Order on JCS's registered agent. (Docket no. 16).  Plaintiff also served JCS's registered agent with a summons and copy of the complaint on November 26, 2014.  (Docket no. 15).

On December 4, 2014, counsel for the plaintiff appeared for a hearing on plaintiff's motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65.  (Docket no. 18).  Based on the evidence presented, the court found that GTL made a persuasive showing of ongoing trademark infringement and granted plaintiff's motion for the entry of a preliminary injunction. (Docket no. 19 at 2, 4).  The Order issued by the court also required GTL to post a corporate surety bond in the amount of $5,000 as security for the preliminary injunction.  (*Id.* at 5).

Pursuant to Federal Rule of Civil Procedure 12(a), JCS was required to file a responsive pleading on or before December 17, 2014, twenty-one days from the date of service.  No responsive pleading has been filed by JCS. On January 9, 2015, plaintiff filed a request for entry of default along with an affidavit in support (Docket no. 21) and the Clerk of Court entered a

[1] Plaintiff filed a Motion to Extend Temporary Restraining Order (Docket no. 12), which the court denied as moot following the entry of a preliminary injunction on December 4, 2014 (Docket no. 19).

default against JCS in accordance with Rule 55(a) of the Federal Rules of Civil Procedure on January 14, 2015 (Docket no. 22). On February 26, 2015, plaintiff filed a motion for default judgment (Docket no. 24), a memorandum in support (Docket no. 25), and noticed the motion for a hearing on March 13, 2015 (Docket no. 26). Plaintiff also attached several exhibits to the memorandum in support, including: a transcript of proceedings before the Honorable T.S. Ellis, III on December 4, 2014; a declaration in support of plaintiff's request for attorneys' fees and costs; and copies of attorney invoices issued to GTL prior to and during the pendency of this litigation. (Docket no. 25, Exs. 1–8). On March 12, 2015, plaintiff filed a supplement to the motion for default judgment describing the attorney's fees incurred since January 31, 2015. (Docket no. 27).

Plaintiff served JCS's registered agent with copies of the motion for default judgment, memorandum in support, and notice of hearing by first class mail on February 26, 2015. (Docket nos. 24–26). Plaintiff also sent copies of these pleading to JCS's last known address at: 3523 McKinney Ave., Suite 750, Dallas, TX 75204. (*Id.*). The supplement to the motion for default judgment was served on the defendant in a similar manner on March 12, 2015. (Docket no. 27). On March 13, 2015, counsel for the plaintiff appeared before the undersigned and no one appeared on behalf of the defendant.

## Factual Background

The following facts are established by the verified complaint (Docket no. 1) ("Compl.") and the memorandum in support of plaintiff's motion for default judgment (Docket no. 25). GTL is a corporation organized under the laws of Delaware and headquartered in Mobile, Alabama. (Compl. ¶ 5). GTL provides telecommunications services to correctional facilities in the United States and maintains a management office in Reston, Virginia. (Compl. ¶¶ 5–6). JCS

is a limited liability company organized under the laws of Texas, described by plaintiff as a "direct competitor of GTL" that provides telecommunications services to correctional facilities throughout the United States, including in the Commonwealth of Virginia. (Compl. ¶¶ 7–8).

Plaintiff is the owner of numerous trademarks registered with the U.S. Patent and Trademark Office. (Compl. ¶ 43, Ex. I). The trademarks at issue in this litigation concern a portion of those trademarks, collectively referred to by the plaintiff as the "GTL Marks." Plaintiff commenced its exclusive use of the marks "GLOBAL TEL*LINK" and "GTL" as early as 1989 and began using the mark "OFFENDERCONNECT" through its wholly owned subsidiary DSI-ITI, LLC as early as July 8, 2009. (Compl. ¶ 9). Plaintiff uses the GTL Marks in connection with providing telecommunications services to correctional facilities, along with a website that allows customers to manage account information related to these services. (*Id.*). Through plaintiff's continuous use and promotion of the GTL Marks, they have become distinctive and well-known in the correctional facility industry. (Compl. ¶¶ 10–11). Plaintiff's investment in these marks have also caused consumers to associate "GLOBAL TEL*LINK," "GTL," and "OFFENDERCONNECT" with the superior quality of services offered by GTL. (Compl. ¶ 11).

Defendant began infringing on GTL's trademarks as early as 2012. (Compl. ¶ 43). The purpose of JCS's infringement is to mislead and cause confusion amongst potential customers, which "has harmed, and is harming, GTL by leaving consumers who had inferior experiences with Jail Call Services, but believed they were dealing with GTL, unwilling to use GTL's services." (Docket no. 25 at 3). In terms of direct infringement, references to the GTL Marks appear on the JCS website, such as: "Save 80% on Global Tel Link/gtl.net Inmate Calls." (Compl. ¶ 24). JCS also utilizes more indirect methods, such as incorporating the GTL Marks

4

into "metatags" on the JCS website, which is a form of internal coding that causes search engines to redirect potential GTL customers to the JCS website. (Compl. ¶ 25). The unauthorized use of the GTL Marks in this manner improperly diverts business away from GTL and towards JCS. (Compl. ¶ 30).

On August 14, 2012, counsel for GTL sent a request to "cease and desist" by electronic mail to the address listed on the JCS website. (Compl., Ex. F). After receiving no response, another request was sent by certified mail to JCS's registered agent at: 10900 South Stonelake Blvd., Suite A-320, Austin, TX 78759. (*Id.*). On January 17, 2013, plaintiff filed a lawsuit in the United States District Court for the Eastern District of Virginia, alleging federal trademark infringement and several violations under the Lanham Act (false advertising, false designation of origin and unfair competition). *Global Tel\*Link Corporation v. Jail Call Services, LLC*, No. 1:13cv0075 (E.D. Va. Jan. 17, 2013), ECF No. 1. The parties agreed to dismiss the case on June 14, 2013, following the execution of a settlement agreement. (Compl., Ex. G).

On November 18, 2014, plaintiff raised these allegations for a second time after discovering that "JCS, in blatant disregard of its obligations under the Settlement Agreement and GTL's valuable rights in the GTL Marks, is once again engaging in the very conduct which it agreed to cease." (Compl. ¶ 1). In the motion for default judgment, plaintiff seeks: (i) $100,000 in liquidated damages for breach of the settlement agreement; (ii) $71,407.10 in attorney's fees and costs; (iii) statutory damages for defendant's trademark violations, trebled in view of the willful and deliberate nature of JCS's unlawful conduct; (iv) conversion of the preliminary injunction previously entered by this court into a permanent injunction; and (v) a refund of the bond posted by GTL as security for the preliminary injunction. (Docket no. 24 at 1–2). Plaintiff alleges that "[u]nless and until JCS is enjoined from any further unauthorized exploitation of the

GTL Marks and breach of the Settlement Agreement, JCS will continue to use the GTL Marks in violation of GTL's rights." (Compl. ¶ 43).

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Based on the defendant's failure to file a responsive pleading in a timely manner, the Clerk of Court has entered a default as to JCS. (Docket no. 22). A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter when necessary to enter or effectuate judgment.

## Jurisdiction and Venue

A court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment. Plaintiff asserts various claims under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* and claims under Virginia law. This court has subject matter jurisdiction over the Lanham Act claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and supplemental jurisdiction over the related Virginia law claims pursuant to 28 U.S.C. § 1367(a). This court also has personal jurisdiction over the defendant because Virginia's long-

arm statute authorizes the exercise of jurisdiction and JCS satisfies the "minimum contacts" test under the Due Process Clause of the Fourteenth Amendment. *See CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009). Specifically, JCS engages in marketing and sales within the Commonwealth of Virginia and has engaged in conduct that was intended to, and resulted in, harm to plaintiff's business in Virginia. (Compl. ¶ 3). The settlement agreement entered into by the parties was also the result of prior litigation before this court, the breach of which now forms part of the basis for this action.

Given that JCS is in default, and therefore admits the factual allegations in the complaint, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that the court has personal jurisdiction over JCS, and that venue is proper in this court.

**Service**

Pursuant to Federal Rule of Civil Procedure 4(h), a corporation, partnership, or other unincorporated association may be served in a judicial district of the United States (A) in the manner prescribed in Rule 4(e)(1) for serving an individual or (B) by delivering a copy of the summons and complaint to an officer, managing, or general agent, or any other agent authorized by law to receive service of process. Rule 4(e)(1) provides that an individual may be served in a judicial district of the United States by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located. Section 13.1-1018 of the Virginia Code provides, in part: "A domestic or foreign limited liability company's registered agent is the limited liability company's agent for service of process, notice, or demand required or permitted by law to be served on the limited liability company." Va. Code. Ann. § 13.1-1018(A).

7

On November 18, 2014, a summons was issued as to defendant JCS and returned executed on December 3, 2014. (Docket nos. 5, 15). The proof of service accompanying the executed summons indicates that a private process server delivered the summons to "Daniel McMahon, Authorized Agent"—an individual designated by law to accept service of process on behalf of JCS—on November 26, 2014. (Docket no. 15). Based on the foregoing, the undersigned magistrate judge recommends a finding that service of process has been accomplished in this action.

## Grounds for Entry of Default

In accordance with Federal Rule of Civil Procedure 12(a), JCS was required to file a responsive pleading by December 17, 2014; twenty-one days after plaintiff served JCS's authorized agent with the summons and complaint. No responsive pleading has been filed by the defendant and the time for doing so has since expired. On January 7, 2015, approximately three weeks after the response deadline, plaintiff filed a request for entry of default against JCS. (Docket no. 20).[2] Service of plaintiff's request for entry of default was accomplished by sending copies to JCS's last known address at 3523 McKinney Ave., Suite 750, Dallas, TX 75204 and to JCS's registered agent at 10900 South Stonelake Blvd., Suite A-320, Austin, TX 78759. (Docket no. 21). Thereafter, the Clerk of Court entered a default against JCS on January 14, 2015. (Docket no. 22).

For the reasons stated above, the undersigned magistrate judge recommends a finding that JCS was properly served, that it failed to file a responsive pleading in a timely manner, and that the Clerk of Court properly entered a default as to the defendant JCS.

---

[2] Counsel revised this filing on January 9, 2015 and properly attached an affidavit in support. (Docket no. 21).

### Liability and Relief Sought

According to Federal Rule of Civil Procedure 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Plaintiff's motion for default judgment seeks: (i) $100,000 in liquidated damages; (ii) $71,407.10 in attorney's fees and costs; (iii) statutory damages for defendant's trademark violations, trebled in view of the willful and deliberate nature of JCS's unlawful conduct; (iv) conversion of the preliminary injunction previously entered by this court into a permanent injunction; and (v) a refund of the bond posted by GTL as security for the preliminary injunction. (Docket no. 24).

### A. Breach of Contract (Count I)

On June 14, 2013, the parties executed a settlement agreement that resolved a similar trademark infringement action brought by GTL in 2013. This agreement set forth certain conditions and imposed obligations on JCS, including:

> 1. JCS will eliminate the use of the GTL Marks, from its sponsored advertisements and subdomains located within JCS's website . . . and from any other print, video, audio or electronic media.
>
> 2. JCS will remove metatags that refer, use, pertain or concern the GTL Marks from its source code.

(Compl., Ex. G). Paragraph 18 of the settlement agreement also provides: "This Agreement shall be governed by and interpreted in accordance with federal laws and the laws of the Commonwealth of Virginia, as applicable, without regard to conflicts of law." (*Id.*).

In order to state a claim for breach of contract under Virginia law, the plaintiff must prove: "(1) a legal obligation of a defendant to the plaintiff; (2) a violation or breach of that right or duty; and (3) a consequential injury or damage to the plaintiff." *Westminister Investing Corp. v. Lamps Unlimited, Inc.*, 237 Va. 543, 379 (1989) (quoting *Caudill v. Wise Rambler, Inc.* 210 Va. 11, 13 (1969)). Despite the obligations set forth in the settlement agreement and accepted by

JCS, "[i]n August 2014, GTL discovered that JCS . . . was once again [using] the GTL Marks on the JCS website as well as metatags and keywords containing the GTL Marks to divert consumers to the JCS website." (Compl. ¶ 41). JCS's breach of this agreement forms the basis of plaintiff's breach of contract claim currently before the court. Given that the factual allegations in the complaint are deemed admitted, the undersigned recommends a finding that plaintiff has established a claim for breach of contract.

Accordingly, plaintiff is entitled to liquidated damages as contemplated in paragraph 10 of the settlement agreement, in which JCS agreed "to pay the sum of Ten Thousand Dollars ($10,000) for every single occurrence of a material breach of this Agreement." (Compl., Ex. G). As set forth in the memorandum in support of plaintiff's motion for default judgment, JCS's use of the GTL Marks on its website, metatags, and purchase of search engine keywords without preapproval amounts to ten (10) individual material breaches of the settlement agreement. Based on the foregoing, the undersigned recommends a finding that GTL is entitled to recover $100,000 in liquidated damages arising from JCS's breach of the settlement agreement.

**B. Federal Trademark Infringement (Count II) and False Advertising (Count IV)** [3]

Plaintiff seeks injunctive relief under sections 32(1) and 43(a) of the Lanham Act. *See* 15 U.S.C. §§ 1114(1), 1125(a). Under the Lanham Act, civil liability attaches when a party uses a reproduction or colorable imitation of a registered mark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services" such that the use is likely to cause confusion or mistake. 15 U.S.C. §1114(1)(a). Injunctive relief may be provided to the owner of a famous or distinctive mark where use of the mark by another "is likely to cause dilution by

---

[3] The complaint contains three additional counts that are omitted from reference in plaintiff's motion for default judgment and accompanying memorandum in support: Common Law Trademark Infringement (Count III), Tortious Interference with a Business Expectancy (Count V), and False Designation of Origin and Unfair Competition Under Section 43(a) of the Lanham Act (Count VI). Accordingly, the undersigned does not address these counts or the requested relief.

blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1).

In order to prevail on its claim for trademark infringement under the Lanham Act, plaintiff must establish that it has a registered mark and that JCS's unauthorized use of the mark in commerce is likely to cause confusion among consumers. *See Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 259 (4th Cir. 2007); *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006); *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001).

Plaintiff is the registered owner of several trademarks which have been used to identify, advertise, and promote the services offered by GTL. (Compl. ¶¶ 13–19). At the hearing on plaintiff's motion for a preliminary injunction, the court considered the testimony of Jon Schiffrin, who registered the GTL Marks with the U.S. Patent and Trademark Office. (Docket no. 25, Ex. 1) ("Tr."). When asked how counsel determined the nature and extent of JCS's infringement, Mr. Schiffrin testified that the search terms "Global Tel*Link," "GTL," and "Offender Connect" returned results for JCS when entered into popular search engines. (Tr. 11:6–12:3). Mr. Schiffrin also testified that the ranking of search results was not a random function of the search engine itself; rather, the purchase and ownership of certain keywords determines the order of available websites. (Tr. 12:4–20). Through JCS's purchase of search terms that directly referenced the GTL Marks, internet users were directed away from services offered by the plaintiff and towards the competing services offered by JCS. Lastly, Mr. Schiffrin

explained how "metatags" on the JCS website contained internal coding that referenced and infringed upon the GTL Marks. (Tr. at 20:8–24).

In assessing the likelihood of confusion in a trademark infringement case, the Fourth Circuit has identified nine factors that should be considered: (1) the strength or distinctiveness of plaintiff's mark; (2) the similarity of the parties' marks; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the parties; (5) the similarity of advertising used by the parties; (6) defendant's intent; (7) actual confusion; (8) the quality of defendant's product; and (9) the sophistication of the consuming public. *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009) (citing *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984) (identifying factors one through seven); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463-64 (4th Cir. 1996) (identifying factors eight and nine)). Not all of these factors will be relevant in every trademark dispute and there is no need for each factor to support plaintiff's position on the likelihood of confusion issue; however, evidence of actual confusion is particularly important in analyzing the likelihood of confusion. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 937 (4th Cir. 1995); *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 320 (4th Cir. 1992); *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984).

The GTL Marks are valid federally registered trademarks that are entitled to protection under the Lanham Act. Their registration is also *prima facie* evidence that the GTL Marks are at least descriptive and have acquired distinctiveness. *America Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001). Plaintiff alleges that JCS's use of the GTL Marks in keyword advertising and metatags directs consumers away from the services offered by GTL and towards the competing services offered by JCS. As a result, consumers are likely to be confused and

12

deceived as to the source, sponsorship, affiliation or approval of plaintiff's services. Furthermore, because the purchase of certain keywords from internet search engines requires deliberate action, GTL argues that JCS's conduct was intentional and willful.

By using the GTL Marks in this manner, plaintiff also claims that JCS is liable for false advertising under the Lanham Act. In order to establish a claim of false advertising under the Lanham Act, the plaintiff must prove by a preponderance of the evidence that:

> (1) a false statement of fact [was made] by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sale from itself to defendant or by a loss of goodwill associated with its product.

*Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, 26 F. Supp. 2d 834, 861–62 (E.D. Va. 1998) (quoting *United Industries Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998)). As plead in the complaint, defendant's use of the GTL Marks served as a means to direct potential customers away from the services offer by GTL and towards the competing services offered by JCS. While the use of GTL Marks in such a manner suggests that the defendant's purpose was to deceive consumers—intending to do business with GTL—into purchasing the services offered by JCS, the complaint does not contain sufficient averments to support a finding that a *false* statement was made by the defendant. There is no allegation that the only direct statement identified in the complaint being made by JCS "Save 80% on Global Tel Link/gtl.net Inmate Calls" is in fact false. (Compl. ¶ 24).

Based on the foregoing, the undersigned recommends a finding that JCS's conduct is, at least, in violation of section 32(1) of the Lanham Act. *See* 15 U.S.C. § 1114(1).[4]

---

[4] The relief being recommended is not adversely impacted by the lack of a finding of false advertising under 15 U.S.C. § 1125(a) given the finding of infringement under 15 U.S.C. § 1114(1).

## C. Permanent Injunction

The Lanham Act provides the court the power to grant injunctions, "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a). In order for the court to provide injunctive relief, "[p]laintiff must demonstrate irreparable harm, the inadequacy of a legal remedy (monetary damages), a weight in its favor when balancing hardships, and that the public would not be disserved by making the injunction permanent." *Toolchex, Inc. v. Trainor*, 3:08cv0236, 2009 WL 2244486, at *2 (E.D. Va. July 24, 2009) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

"[I]rreparable injury regularly follows from trademark infringement." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 939 (4th Cir. 1995). As alleged in the complaint and established through testimony provided at the hearing on plaintiff's motion for a preliminary injunction, "JCS's conduct, if it continues, will result in irreparable harm to GTL and, specifically, to the goodwill associated with the GTL Marks, unless such conduct is enjoined." (Compl. ¶ 65). The fact that JCS has continued to infringe on the GTL Marks, despite an agreement signed by the parties before this court, outweighs the hardship of a permanent injunction. Furthermore, the undersigned finds that the public would be served by prohibiting JCS from engaging in conduct that is likely to cause confusion or mistake as to the source, sponsorship, affiliation, or approval of GTL's services. For these reasons, the undersigned recommends that the provisions of the preliminary injunction entered on December 4, 2014 (Docket no. 19) be converted to a permanent injunction and that JCS be permanently enjoined from infringing upon the GTL Marks.

14

### D. Statutory Damages

Plaintiff also seeks an award of statutory damages pursuant to 15 U.S.C. § 1117(c). In a case involving the use of a counterfeit mark or designation, section 1117(c) provides that the plaintiff may elect to recover, instead of actual damages and profits, an award of statutory damages in the amount of:

> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c). A "counterfeit mark" is defined as "a mark that is registered on the principal register . . . and that is in use." 15 U.S.C. § 1116(d)(1)(B)(i). As set forth in the complaint and accompanying exhibits, the GTL Marks are registered on the principal register and are in use. (Compl. ¶¶ 13–19, Exs. A–E). Section 1117(b) also allows the court to award treble damages together with reasonable attorney's fees if the violation consists of "intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services." 15 U.S.C. § 1117(b)(1). The court may also award prejudgment interest on the amount, calculated at an annual interest rate under 26 U.S.C. § 6621(a)(2) "beginning on the date of the service of the claimant's pleadings setting forth the claim for such entry of judgment and ending on the date such entry is made, or for such shorter time as the court considers appropriate." 15 U.S.C. § 1117(b).

Although otherwise an appropriate request given the nature and circumstances of this case, the undersigned recommends that plaintiff not be awarded statutory damages in addition to the substantial liquidated damages that are being recommended based on the breach of the

settlement agreement in Count 1. Given the breach of contract claim is based on JCS's continued use of the GTL Marks, the undersigned finds that an award of statutory damages pursuant to 15 U.S.C. § 1117(c) would be duplicative. The evidence before the court concerning JCS's use of the GTL Marks in metatags and in keyword advertising would, at best, support an award at the low end of the statutory range. Given that plaintiff would not be entitled to recover twice for its damages, plaintiff's request for statutory damages as well as the enhancement of those damages pursuant to 15 U.S.C. § 1117(b) should be denied. [5]

### E. Attorney's Fees and Costs

In addition to damages, plaintiff seeks an award of attorney's fees as provided for in the settlement agreement. Specifically, paragraph 19 provides: "In any action to enforce this Agreement, the prevailing party shall have the right to obtain attorney's fees and costs associated with the enforcement action from the non-prevailing party." (Docket no. 1, Ex. G). 15 U.S.C. § 1117(a) also provides for the award of full costs and reasonable attorneys' fees in "exceptional cases," which courts have found when the plaintiff demonstrates that "defendant's conduct was malicious, fraudulent, willful or deliberate in nature." *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 550 (4th Cir. 2004).

Based on the foregoing, the undersigned recommends a finding that plaintiff is entitled to an award of the full costs and attorney's fees incurred by counsel in enforcing GTL's rights under the settlement agreement. The undersigned also finds that although the recently filed supplemental declaration correctly amends counsel's prior calculation of attorney's fees, the amount set forth in the Supplement to Motion for Default Judgment (Docket no. 27) incorrectly calculates the total amount due by $20.00. After reviewing the applicable invoices and

---

[5] Recognizing that JCS has failed to file a responsive pleading and is now in default, an award of damages under subsection (a) would require speculation as to any profits that resulted from defendant's use of the GTL Marks. *See* 15 U.S.C. § 1117(a). Accordingly, plaintiff's request for statutory damages for the trademark violations is proper.

submissions by counsel, the undersigned recommends a finding that GTL is the prevailing party, that the fees and costs incurred by GTL were associated with the enforcement action, and that GTL be awarded $76,475.68 in attorney's fees and costs, consisting of $69,942.38 in fees and $6,533.30 in costs.

### Conclusion

For the reasons stated above, the undersigned magistrate judge recommends that a default judgment be entered in favor of Global Tel*Link Corporation and that an Order be entered consistent with the provisions in the preliminary injunction that Jail Call Services, LLC and its officers, agents, servants, employees, and any other persons acting on its behalf be enjoined from:

> (i)  using and advertising the GTL Marks[6] in connection with JCS's products and services through metatags, Internet search keywords, false representations and false advertising on its Website, in direct communications with customers, and through direct marketing, internet marketing, automated attendants, email, and phone calls; and

> (ii)  committing any other acts calculated to cause consumers to believe that JCS's products or services are, or are affiliated or connected with, GTL's products or services.

It is further recommended that JCS and its officers, agents, servants, employees, and any other persons acting on its behalf shall take prompt steps to remove all use and advertisement of the GTL Marks in connection with JCS's products and services from its Website and the Internet, as well as all advertising, promotional, or marketing material

---

[6] The "GTL Marks" refer to federally registered trademarks for GLOBAL TEL*LINK, U.S. Registration Numbers 3,315,464, and 3,315,465, and 3,315,466, OFFENDERCONNECT, U.S. Registration Number 3,770,529, and GTL, U.S. Registration Numbers 4,611,419, 4,590,401, and 3,154,837.

including direct communications with customers, direct marketing, internet marketing, metatags, Internet search keywords, automated attendants, email, and phone calls, and otherwise cease infringing upon the GTL Marks. The undersigned further recommends that judgment be entered against Jail Call Services, LLC in the amount of $176,475.68 (consisting of $100,000 in liquidated damages arising from the breach of contract claim and $76,475.68 in attorney's fees and costs). Lastly, the cash bond posted by Global Tel*Link Corporation should be remitted following the entry of a final judgment. (Docket no. 11).

## Notice

By means of the court's electronic filing system and by mailing a copy of this proposed findings of fact and recommendations to Jail Call Services, LLC at their last known address: 3523 McKinney Ave., Suite 750, Dallas, TX 75204 and to their Registered Agent: c/o United States Corporation Agents, Inc., Registered Agent, 10900 South Stonelake Blvd., Suite A-320, Austin, TX 78759, the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

ENTERED this 20th day of March, 2015.

_____/s/_____
John F. Anderson
United States Magistrate Judge
    John F. Anderson
    United States Magistrate Judge

Alexandria, Virginia

18